485 P.2d 1173

Harvey MURDOCH, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Ets-Hokin & Galvan, Inc., Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 309.

Court of Appeals of Arizona, Division 1, Department B.

June 17, 1971.

Gorey & Ely, by Stephen S. Gorey, Phoenix, for petitioner.

William C. Wahl, Chief Counsel The Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel State Compensation Fund, by Courtney L. Varner, Phoenix, for respondent Carrier.

JACOBSON, Presiding Judge.

A procedural morass caused by a referee's ruling which resulted in the petitioner filing a premature petition to reopen has led the Industrial Commission into error and requires our setting aside the Commission's award.

Petitioner, Harvey Murdoch, was originally injured in an industrial accident on September 23, 1963. As a result of this injury petitioner has had continuing back problems which have resulted in at least one spinal fusion. Commission action finally culminated in the first award which has pertinence to this review on April 10, 1967, when it entered its "Finding and Award and Order Pending Determination of Earning Capacity", based upon a group medical consultation report.

This award found, among other things, that petitioner's average monthly wage prior to his injury was $573.04; that his condition was stationary as of March 14, 1967; that he was entitled to accident benefits (medical expenses) through March 22, 1967; and that he was entitled to partial temporary disability benefits.

This award was timely protested by petitioner on the grounds that the average monthly wage set was too low and that that he was still in need of active medical care.

The petition for hearing on this protest was supplemented by a report by Dr. R. B. Wickman, indicating that in his opinion petitioner needed additional medical treatment.

The protest was followed by an order of the Commission dated September 7, 1967, which is not material to any issue now before the Court, but which was protested by the petitioner and followed with a petition for hearing, again indicating his average monthly wage was too low and that he needed additional medical treatment for his back injury. Petitioner at this point had discharged his counsel and was proceeding in propria persona.

A hearing on these protests was duly set for December 28, 1967. In the meantime, petitioner, at the suggestion of Dr. Wickman, went to the Mayo Clinic in Roches-

ter, Minnesota, where he obtained medical treatment.

Immediately prior to the December 28, 1967 hearing, petitioner reinstated his former counsel. At the December 28, 1967 hearing a doctor, who was a member of the group consultation which examined the petitioner on March 14, 1967, appeared and testified in substance that petitioner's condition was stationary as of the March 14, 1967 date and that no further treatment was warranted. This witness had not examined the petitioner since the March date. Petitioner's counsel attempted to cross-examine the doctor, using information obtained as a result of the examination and recommendations made by Mayo Clinic. The Fund objected to this line of cross-examination on the grounds that the information was obtained as a result of an examination made after the date of the award and therefore could not be properly used at this hearing although it might be admissible on a petition to reopen. This objection was sustained by the hearing officer. Also, petitioner's counsel at this hearing attempted to introduce medical reports from Mayo Clinic dealing with petitioner's background which were likewise refused.

Because Dr. Hunter, who had been subpoenaed to appear at the December 28, 1967 hearing, was unable to attend at that time, the hearing was continued until January 17, 1968 for the purpose of obtaining his testimony.

On January 11, 1968, petitioner filed a "Provisional Petition for Reopening" alleging that medical evidence obtained subsequent to March 22, 1967 indicated that petitioner was entitled to continuing medical treatment. This petition went on to allege:

"Within petition provisional only, being necessitated by a ruling of Referee at the aforesaid hearing to the effect that all evidence obtained subsequent to the last consultation by the Commission and/or relating to any examination subsequent to its decision was inadmissible at said hearing but must be made the subject of a Petition to Reopen."

At the time set for the January 17, 1968 hearing, petitioner's attorney again attempted through an offer of proof to present testimony from petitioner that since the December, 1968 hearing he had returned to Mayo Clinic, obtained a body cast and was now suffering from no pain whatsoever, although he had previously suffered pain continuously both prior to and subsequent to the March 22, 1967 date. (The use of a body cast had previously been recommended by Mayo Clinic on petitioner's visit there in November of 1967.) This offer was rejected.

Petitioner's counsel attempted to cross-examine Dr. Hunter, a member of the original medical consultation board, as to whether medical investigations conducted after the group consultation was completed might cast light upon the medical situation at the time of the group consultation and specifically those matters which were disclosed as a result of the medical examination conducted at Mayo Clinic. The referee denied counsel the right to cross-examine along these lines, indicating, "[t]here will be no question whatsoever to anything subsequent to that consultation report" and "I instruct you, Mr. Gorey, not to ask questions whatsoever with respect to anything that may have occurred at Mayo Clinic."

This ruling was obviously made by the referee on the basis that any medical evidence which came as a result of examination after the protested award date could only be presented in a hearing on a petition to reopen.

The evidence presented by the doctor who had not examined petitioner since the group consultation in March, 1967 was to the effect that in his opinion petitioner's condition on that date was stationary and no further medical treatment was necessary.

Following this hearing, the referee recommended that the Commission enter an award in essence affirming the award of April 10, 1967, finding petitioner's condition stationary as of March 22, 1967 and

terminating medical benefits as of that date. On May 1, 1968, the Commission entered such an award.

On May 8, 1968, the referee issued a "Notice of Time and Place of Further Hearing" for July 30, 1968. It is not clear whether this hearing was to be in connection with petitioner's Petition to Reopen or was for the purpose of determining loss of earning capacity in connection with the previous awards of the Commission.

On May 21, 1968, petitioner duly protested the award of May 1, 1968, finding petitioner's condition to be stationary as of March 22, 1967. This was duly followed by a request for hearing stating that petitioner was entitled to additional medical benefits, specifically those expenses incurred for treatment at Mayo Clinic.

At the time of the hearing on July 30, 1968, the referee made it clear that he would consider medical testimony occurring as a result of examinations after the April 10, 1967 award only in relation to a petition to reopen and on the issue of earning capacity if the latter issue became pertinent. At this hearing, Dr. Wickman, who was the only medical witness to testify, stated he first saw the petitioner on May 18, 1967. He further testified that when he first saw petitioner it was his opinion that he needed further medical treatment; that his condition on May 18, 1967 was directly related to his previous industrial injury; that he recommended to the petitioner that he be examined by Mayo Clinic; and that in his opinion further surgery was necessary to petitioner's back.

Based upon the recommendation of the referee following this hearing, the Commission entered two awards. The first affirmed its award of May 1, 1968, finding petitioner's condition to be stationary as of March 22, 1967. This award contained a 30-day clause. The other award entered found that petitioner had sustained new, additional or previously undiscovered disability attributable to the industrial accident of September 23, 1963, and that peti-

tioner was entitled to medical benefits from and after January 8, 1968 (the date of the "Provisional Petition to Reopen"). This latter award carried a 20-day clause.

Only the award terminating medical benefits as of March 22, 1967 is before this Court for review.

It is petitioner's basic contention that he is entitled to medical benefits for the period from March 22, 1967 through January 8, 1968.

■ The confusion which has arisen in this case seems to stem from the Fund's contention, based upon Parsons v. Industrial Commission, 98 Ariz. 74, 402 P.2d 20 (1965), that any medical evidence based upon an examination after an award of the Commission can only be presented in relation to a petition to reopen the claim. In our opinion, *Parsons* does not stand for that proposition. What *Parsons* does say is that if the Commission prefers to consider the effect of *conditions developing after an award is made* by application for rehearing, it is estopped to change that position to the petitioner's detriment in further proceedings involving that claim. It is apparent, however, from a reading of the statute dealing with reopening (A.R.S. § 23–1061), that a petition to reopen a claim is only applicable when an award relating to the matter sought to be reopened has become final and an applicant seeks to show a new, additional or previously undiscovered condition for the consideration of the Commission. *See*, Moore v. Industrial Commission, 12 Ariz.App. 325, 470 P.2d 473 (1970). A prerequisite for such a petition, however, is the finality of a previous award of the Commission. The amendments to the workmen's compensation laws effective January 1, 1969, make this distinction and interpretation clear. (*See*, A.R.S. § 23–1061, as amended.)

■ In this case, a timely protest and petition for hearing followed the award of April 10, 1967, which terminated medical benefits as of March 22, 1967. The effect of such a protest and petition was to set

aside the Industrial Commission's award. Russell v. Industrial Commission, 104 Ariz. 548, 456 P.2d 918 (1969); Kuchinski v. Industrial Commission, 11 Ariz.App. 26, 461 P.2d 505 (1969). In such a case, the Commission on the subsequent hearing is required to consider all testimony dealing with the issues protested and which have not previously become final by reason of non-protest. German v. Industrial Commission, 12 Ariz.App. 301, 469 P.2d 867 (1970). At such a hearing the admissibility of evidence is not determined by when it was obtained, but rather whether it is material, this materiality to be governed by whether the testimony sheds light on the claimant's condition as of the date of the award protested.

By the referee's ruling in this case, petitioner was not only denied the right of effective cross-examination of the consultation board doctors, but was denied the opportunity to present evidence that his condition was in fact not stationary.

From what we have said, petitioner was not relegated to a petition to reopen in order to present medical testimony obtained subsequent to the award if that testimony bears upon his condition at the time of the award. The award of the Commission must be set aside in order to allow the petitioner to present material evidence dealing with whether his condition was in fact stationary as of March 22, 1967. We do not intend to intimate that in our opinion the presentation of such evidence, when considered in connection with other medical testimony, requires a contrary result from that previously reached by the Commission. What we do hold is that petitioner is entitled to present such testimony, and the Commission must consider the same in reaching its determination.

Award set aside.

HAIRE and EUBANK, JJ., concur.